UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA WEBSTER,

    Plaintiff,

v.                                              Case No. 5:06-cv-162

COMMISSIONER OF SOCIAL           Hon. Janet T. Neff
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

        Plaintiff was born on November 25, 1958 and completed two years of college (AR 43, 61).[1] Plaintiff alleges that she has been disabled since March 16, 2002 (AR 43). She had previous employment as a bus driver for the handicapped (AR 56). Plaintiff identified her disabling conditions as problems with sitting or standing too long, leg cramps, and side effects from neurontin (which made her moody and forgetful) (AR 55). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on May 22, 2006 (AR 10-29). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

**II. ALJ'S DECISION**

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity "at any time relevant to this decision" (AR 14).  Second, the ALJ found that she suffered from severe impairments of

3

degenerative joint disease and depression (AR 14). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14-15).

The ALJ decided at the fourth step that plaintiff had a residual functional capacity (RFC):

> to perform simple, unskilled work at the light exertional level with a sit/stand option that does not involve maintaining intense concentration; or involve frequent changes or adaptations; or require taking initiative or making independent decisions; or involve meeting productions, quotas, goals, or keeping pace with other coworkers, i.e., assembly/production line. The work must not require more than occasional climbing, balancing, kneeling, crouching, crawling, or bending and no concentrated exposure to extreme cold.

(AR 15). The ALJ found that plaintiff could not perform her past relevant work as a bus driver (AR 18).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work (AR 18). The ALJ found that there are a significant number of jobs in the national economy including: hand packager (4,000 jobs); equipment cleaner (1,500 jobs); parking lot attendant (1,000 jobs); sorter (1,000 jobs); inspector (4,000 jobs); and, assembler (10,000 jobs) (AR 19). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 19).

### III. ANALYSIS

Plaintiff raised one issue on appeal.

**Did the ALJ fail to properly consider the effects of obesity in evaluating disability in this claim?**

Although the agency deleted obesity from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1, the Commissioner views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-01p, text available at www.ssa.gov.

However, the Commissioner is not required to consider obesity in every case. As the court stated in *Bledsoe v. Barnhart*, 165 Fed.Appx. 408 (6th Cir. 2006):

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe*, 165 Fed.Appx. at 411-412.

Here, the ALJ's decision did not address plaintiff's obesity as a severe impairment or as increasing the severity of her other limitations. Plaintiff states that she is 67 inches tall and weighs 237 pounds (AR 198), and that her body mass index (BMI) of 37.1 classifies her as "extremely obese" under the *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults*, NIH Publication No. 98-4083 Sept. 1998). Plaintiff's Brief

at 13-14. Plaintiff contends that her obesity is medically equivalent to a major dysfunction of the joints, Listing 1.02A, because she cannot "ambulate effectively." *Id.* at 15.

The "Listing of Impairments" is set forth at 20 C.F.R. § 404, Subpt. P, Appendix 1. The Listing "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. *See also* 20 C.F.R. § 416.925. The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.*

At the third step of the sequential evaluation, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). Where a claimant successfully carries

this burden, the Secretary will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis in original). A social security claimant cannot qualify for benefits under the equivalence step by merely "showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* An impairment will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings as shown in the medical evidence are at least equal in severity and duration to a listed impairment. *See Land v. Secretary of Health and Human Servs.*, 814 F.2d 241, 245 (6th Cir.1986) (per curiam). Generally, the opinion of a medical expert is required before a determination of medical equivalence is made. *Retka v. Commissioner of Social Sec.*, No. 94-2013, 1995 WL 697215 at *2 (6th Cir., Nov 22, 1995); 20 C.F.R. § 404.1526. If the evidence fails to demonstrate the required severity as to even one of the criteria, it would be fatal to plaintiff's claim. *See Hale*, 816 F.2d at 1083; *King*, 742 F.2d at 973. "Even in cases where the claimant has had an impairment which came very close to meeting a listing, this court has refused to disturb the Secretary's finding on medical equivalence." *Retka*, 1995 WL 697215 at *2, *citing Dorton v. Heckler*, 789 F.2d 363, 366 (6th Cir.1986) (per curiam); *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir.1985) (per curiam).

Here, plaintiff contends that her obesity is medically equivalent to Listing 1.02A. She relies on SSR 02-1p, which provides in pertinent part as follows:

> We may also find that obesity, by itself, is medically equivalent to a listed impairment . . . For example, if the obesity is of such a level that it results in an

7

inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence.

SSR 02-01p.[2]

The definition for the "inability to ambulate effectively" is set forth in Listing 1.00B2b as follows:

b. What We Mean by Inability to Ambulate Effectively

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to

---

[2] Listing 1.02A provides as follows:

"1.02. *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints(s).  With:

A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively, as defined in 1.00B2b."

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 1.02.

8

> carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* at Listing 1.00B2b.

While SSR 02-1p contemplates the possibility that a claimant could establish obesity as medically equivalent to Listing 1.02A, plaintiff has failed to establish medical equivalency in this case. Plaintiff's claim is based upon her testimony that she has numbness and tingling in her legs and sometimes needs to lie down during the day (AR 238-41). Plaintiff's Brief at 15-16. This testimony falls far short of demonstrating the "inability to ambulate effectively" under Listing 1.00B2b. More importantly, plaintiff does not identify any medical evidence to support the claim that her obesity is medically equivalent to Listing 1.02A. On the contrary, three treating neurologists, John D. Karakitsos, M.D., Jayne H.W. Martin, D.O., and Harry S. Greenberg, M.D., found that plaintiff had no problems walking. In April 2002, Dr. Karakitsos found that plaintiff "is able to walk without assistance," and that "[s]he was able to walk well and walked in tandem" (AR 171-72). In March 2003, Dr. Martin found that plaintiff's "[c]oordination, gait and station are normal" (AR 108). Finally, in September 2005, Dr. Greenberg found that plaintiff's "heel-toe and routine walking are normal" (AR 222). The lack of medical evidence demonstrating plaintiff's "inability to ambulate effectively" is fatal to the claim that her obesity is medically equivalent to Listing 1.02A. *Sullivan*, 493 U.S. at 531. *See, e.g., Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891 at *8 (E.D.N.Y. June 27, 2007) (denying claim that obesity was medically equivalent under SSR 02-1p and Listings 1.00B2b and 1.02A because there was no medical evidence indicating the plaintiff could not ambulate effectively). Accordingly, plaintiff has failed to demonstrate that the ALJ improperly considered the effects of her obesity.

9

**IV.     Recommendation**

I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  December 26, 2007                                    /s/ Hugh W. Brenneman, Jr.
                                                             HUGH W. BRENNEMAN, JR.
                                                             United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).